PER CURIAM.
Appellee, as administratrix of the Estate of Lillian A. Davol, brought four actions in replevin to recover possession of furs, jewelry and other personal property alleged to be in possession of defendants, appellants here. Defendants countered with a suit in equity by which they secured an injunction restraining further proceedings in the re-plevin suits. The cause in equity proceeded and an answer and a counterclaim were tendered by the defendants who were the plaintiffs in the law actions, in which it was contended that a confidential relation existed between appellants and the deceased, that appellants were in possesson of the furs, jewelry and large sums of money but that none of said articles were gifts to them by deceased during1 her lifetime. The counterclaim sought return of a large ■ emerald (15 or 16 carats) alleged to be in possession of Mr. and Mrs. Booth. • •
' At final hearing, after eyidence, the Chancellor entéred a final decree bn February 12, 1954, in which he found-(1) that the administratrix did not waive the “Dead Man’s Statute”, Section 90.05, F.S., F.S.A. He limited the evidence offered by excluding testimony of interested persons as to transactions or communications with the deceased. (2) The court, also found that while Mrs. Davol was addicted to the use of alcoholics and drugs or sleeping pills, such addiction was not such as to dethrone her reason and render her unbalanced or incompetent. (3) He imposed the burden of proving title to the articles in question on defendants in the replevin suits, who were in possession of them. This ruling is one of the most vigorously controverted here. (4) The Chancellor further found that defendant John Parkhurst Booth was attorney for Mrs. Davol, and stood in confidential relation to her. (5) The final decree found that Mrs. Booth failed to prove a gift of the five pieces of jewelry she claimed to have been made to her by Mrs. Davol, including the emerald, a punch bowl, and an *664 ermine evening wrap, and authorized the administratrix to secure possession of them. (6) The Chancellor further found that the housekeeper, Jessie McRae, stood in confidential relation to Mrs. Davol, and that the evidence failed to show that a platinum bracelet, a sapphire ring, and a fur wrap piece were gifts to her by Mrs. Davol, and authorized their recovery by the adminis-tratrix. He did find that the evidence supported the gift of a 7.91 carat diamond ring to Jean Hungerford and the money gifts to Richard Booth. From the final decree of the Chancellor, we are confronted with an appeal and a petition for certiorari under the rules of this court; the latter being addressed to a rule to show cause why the Booths should not be held in contempt for failure to deliver the large emerald or its value to the administratrix, said to be $2,-850.
Numerous questions are urged for determination. They rest on whether or not the administratrix waived the “Dead Man’s Statute”, Section 90.05, F.S., F.S.A., and whether or not the trial court committed error in requiring those in possession of the articles in litigation to go forward with proof of their title. The other questions go to the admission or the rejection of evidence, some of it in the light of the challenge to the “Dead Man’s Statute”.
There is a wealth of argument about whether or not the “Dead Man’s Statute” was waived. It is contended that by filing “requests for admissions” on May 26, 1952, appellee waived the “Dead Man’s Statute”, in that such requests pertain to the effect of transactions and conversations with the deceased. It is also contended that the effect of these “requests” was supported by pretrial depositions secured by the Booth family which, taken together, waived the “Dead Man’s Statute”. The record does not reveal any response to the “requests”, neither is it in such condition that we could venture to explore the point. When this is the case, we should not pit our judgment against that of the Chancellor.
We have examined the other questions carefully and while we are convinced that as to some of them procedural errors may have been committed, we do not think that in view of all that took place they were harmful, because the gist of the controversy before the court was whether or not Mrs. Davol, the testatrix, made a gift of the articles in litigation to those in possession of and claiming title to them. They appear to have been made a few weeks before her death. Whether they were gifts inter vivos or gifts causa mortis is not necessary to determine. On this question, the competent evidence overwhelmingly supports the finding and decree of the Chancellor, which required return of most of the alleged gifts to the Estate.
The judgment appealed from is accordingly affirmed and the petition for certio-rari to review an order of the Rule to show cause entered in same action May 4, 1954, is denied.
It is so ordered.
MATHEWS, C. J., TERRELL and SE-BRING, JJ., and KANNER, Associate Justice, concur.